# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――

Argued September 4, 2025          Decided July 21, 2026

No. 22-1163

HOSPITAL MENONITA DE GUAYAMA, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

―――――

Consolidated with 22-1180

―――――

On Remand from the Supreme Court of the United States

―――――

*Patrick M. Muldowney* argued the cause for petitioner. With him on the briefs were *Angel Munoz Noya* and *Meagan L. Martin*.

*Heather S. Beard*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *William B. Cowen*, Acting General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *Meredith Jason*, Assistant General Counsel, and *Elizabeth A. Heaney*, Supervisory Attorney. *David S. Habenstreit*, Assistant General Counsel, entered an appearance.

*Matthew J. Ginsburg* and *Maneesh Sharma* were on the brief for *amicus curiae* American Federation of Labor-Congress of Industrial Organizations in support of respondent.

Before: RAO and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

Dissenting opinion filed by *Senior Circuit Judge* RANDOLPH.

RAO, *Circuit Judge*: The National Labor Relations Board created a rule that compels the new owner of a business to recognize and bargain with an incumbent union for up to one year, irrespective of whether that union has the support of a majority of employees. Hospital Menonita de Guayama (the "Hospital") challenged the so-called "successor bar" as inconsistent with the National Labor Relations Act. This court upheld the successor bar by deferring to the Board's judgment and its "reasonable" policymaking choices. We must now reconsider the Hospital's legal challenge because the Supreme Court granted certiorari, vacated our judgment, and remanded for further consideration in light of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

*Loper Bright* reaffirmed that courts have an independent obligation to interpret statutes and not defer to an agency's interpretation of the scope of its statutory authority. Reviewing the Hospital's statutory challenge without deference to the Board, we conclude the successor bar is inconsistent with the Act. Because the bar effectively suspends the Act's core guarantees of employee freedom and majority rule in collective bargaining, the Board lacks authority to impose this rule. We

therefore grant the Hospital's petition for review and deny the Board's cross-petition for enforcement.

## I.

## A.

This case concerns the Board's authority to establish the successor bar, and so we begin with the statutory framework governing employees' rights to bargain collectively. The National Labor Relations Act "protect[s] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151. Section 7 of the Act secures employees' freedom of choice by vesting them with the right "to bargain collectively through representatives of their own choosing" or "to refrain" from doing so. *Id.* § 157. To effectuate this right, section 9(a) requires that the "exclusive" bargaining representative for each employee unit be "designated or selected" by "the majority of the employees in [the] unit." *Id.* § 159(a).

The unfair labor practices prohibited by section 8 ensure that unions and employers alike do not restrain employees' exercise of their Section 7 right to choose whether and how to collectively bargain. *Id.* § 158(a)(1), (b)(1). Once a majority of employees have decided how to exercise that right, their choice "cannot be arrogated by a union or an employer." *Colorado Fire Sprinkler, Inc. v. NLRB*, 891 F.3d 1031, 1040 (D.C. Cir. 2018) (cleaned up); *see* 29 U.S.C. §§ 158(a)–(b), 160. An employer must bargain with a union that has been chosen by a majority of employees and is prohibited from bargaining with a union that lacks majority support. *See* 29 U.S.C. §§ 159(a), 158(a)(1)–(2) & (5); *Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB* ("*Garment Workers*"), 366 U.S. 731, 737–38 (1961) (holding an employer abridges section 7 rights when it recognizes and bargains with a union "selected by a minority

of its employees, thereby impressing that agent upon the nonconsenting majority").

A union is recognized as representing a majority of employees if it is certified by the Board following an election or obtains "recognition from the employer by providing proof of majority support." *Colorado Fire Sprinkler*, 891 F.3d at 1035 (cleaned up); *see* 29 U.S.C. § 159(a); *Allied Mech. Servs., Inc. v. NLRB*, 668 F.3d 758, 766–67 (D.C. Cir. 2012) (explaining representatives may be chosen by a majority "by means other than elections," namely employer recognition) (cleaned up). Elections are conducted and certified by the Board if an employee, an employer, or a union petitions the Board for an election and demonstrates there is "a question of representation" to be resolved. 29 U.S.C. § 159(c)(1). After a "valid election" has been held, the Act expressly bars a new election for one year. *Id.* § 159(c)(3).

An employer that believes a union no longer represents a majority of employees may challenge the union's representation status either by filing an election petition with the Board or by withdrawing recognition of the union, refusing to bargain, and then defending against any unfair labor practice charges by demonstrating the union lost majority support. *Pac. Coast Supply, LLC v. NLRB*, 801 F.3d 321, 326 (D.C. Cir. 2015); *see also Garment Workers*, 366 U.S. at 740 (similar).

B.

The Hospital challenges the lawfulness of the Board's "successor bar," which prohibits any challenge to an incumbent union's representation status for up to one year after a business changes ownership. Adopted in an adjudication by a divided Board in 2011, the successor bar creates an irrebuttable presumption that an incumbent union retains majority support when a new owner assumes control of a business and retains a

majority of the existing employees.[1] *UGL-UNICCO Serv. Co.*, 357 NLRB 801, 802–03, 808–10 (2011). The bar "prevent[s] any challenge to the union's status, whether … by the employer, by employees, or by a rival union." *Id.* at 803. Successor employers must recognize and bargain with an incumbent union for up to one year regardless of whether the union continues to represent a majority of employees. *Id.* at 808–09.

The Board justified the successor bar as a "policy choice" necessary to "preserve … the stability of the existing collective-bargaining relationship." *Id.* at 804–07. The dissenting member criticized the irrebuttable bar as denying employees "an opportunity to exercise their right of free choice on the question of collective-bargaining representation" and enabling incumbent unions to "operate free from any electoral challenge." *Id.* at 812 (Member Hayes, dissenting).

## C.

The Hospital became a successor employer in 2017. The incumbent union, Unidad Laboral de Enfermeras (os) y Empleados de la Salud (the "Union"), claimed to represent the Hospital's employees for all five collective bargaining units. The Union had never negotiated a collective bargaining agreement for two of the units, and the agreements it negotiated for the other three had expired more than four years before the change in ownership. The Hospital initially recognized the

---

[1] The Board first imposed a successor bar in 1999 but then repudiated it a few years later. *Compare St. Elizabeth Manor, Inc.*, 329 NLRB 341, 344 (1999) (adopting successor bar), *with MV Transp.*, 337 NLRB 770, 772–73 (2002) (rejecting the successor bar because it "promotes the stability of bargaining relationships to the exclusion of the employees' Section 7 rights to choose their bargaining representative").

Union but later received evidence showing that in each of the five bargaining units a majority (and in one unit all) of the employees rejected the Union as their representative. The Hospital thereafter refused to bargain and ultimately withdrew recognition of the Union for all units.

The Board charged the Hospital with unfair labor practices under sections 8(a)(1) and 8(a)(5), principally alleging the Hospital unlawfully withdrew recognition and refused to bargain with the Union. *See Hosp. Menonita de Guayama, Inc.*, 371 NLRB No. 108, at *1 (June 28, 2022). An administrative law judge ("ALJ") ruled against the Hospital on these charges. As relevant here, the ALJ applied the successor bar and refused to consider the Hospital's evidence that the Union no longer represented a majority of the employees.

Before the Board, the Hospital argued that the successor bar contravenes the Act, and therefore the Hospital must be allowed to put forward evidence that the refusal to bargain was lawful because the Union was not a majority representative. A divided three-member Board panel adopted the ALJ's findings and conclusions and rejected the Hospital's challenge to the successor bar. *See id.* The Board ordered the Hospital to "recognize and, on request, bargain in good faith with the Union." *Id.* at *7. Member Ring dissented, arguing the Board should abandon the successor bar because it "imposes an unwarranted restriction on employees' Section 7 rights."[2] *Id.* at *10 (Member Ring, dissenting in part).

---

[2] Other Board members have also argued that the successor bar is inconsistent with the requirements of the Act. *See FJC Sec. Servs. Inc.*, 360 NLRB 929, 929 (2014) (Member Miscimarra, concurring) ("I believe the successor-bar rules adopted in *UGL-UNICCO* are inappropriate and inconsistent with the Act in several respects."); *Jamestown Fabricated Steel & Supply, Inc.*, 362 NLRB 1314, 1315–

The Hospital petitioned for review. It raised various challenges to the Board's factual findings and remedies but primarily argued that the successor bar contravenes the Act. In *Hospital Menonita I*, this court rejected the statutory challenge, holding that "the Board is entitled to deference" and that the successor bar "is within the scope of reasoned interpretation of the NLRA." *Hosp. Menonita de Guayama, Inc. v. NLRB*, 94 F.4th 1, 14–15 (D.C. Cir. 2024) (cleaned up). In reaching this conclusion, the court explicitly adopted the First Circuit's reasons for upholding the successor bar, which rested on *Chevron* deference to the Board and a determination that the successor bar was a "reasonable" construction of the Act. *See NLRB v. Lily Transp. Corp.*, 853 F.3d 31, 35–38 (1st Cir. 2017) (applying *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Echoing the First Circuit, this court also highlighted various policy considerations supporting the successor bar's reasonableness, including the bar's limited duration and the fact that a rebuttable presumption would "increase litigation time and expense." *Hospital Menonita I*, 94 F.4th at 15 (cleaned up); *see Lily*, 853 F.3d at 35 (same).

Soon after, the Supreme Court decided *Loper Bright*. The Court "overruled" *Chevron*, holding that reviewing courts should not defer to agencies when deciding questions of law. *Loper Bright*, 144 S. Ct. at 2273. Instead, courts must "interpret

---

16 (2015) (Member Johnson, concurring) (arguing that the successor bar "offends the Section 7 rights of employees"). And other members have continued to register their disagreement with the successor bar. *See, e.g.*, *Bay at N. Ridge Health & Rehab. Ctr., LLC*, 2018 WL 923825, at *1 n.1 (Feb. 14, 2018) (Chairman Kaplan); *Iss Action, Inc.*, 2021 WL 2961491, at *1 n.1 (July 12, 2021) (Member Emanuel); *Town & Country Foods*, 2026 WL 904697, at *1 n.1 (Mar. 26, 2026) (Members Murphy and Mayer).

statutes, no matter the context, based on the traditional tools of statutory construction." *Id.* at 2268.

The Hospital petitioned for certiorari, arguing *Hospital Menonita I* conflicted with *Loper Bright* because the panel failed to review de novo whether the successor bar violates the Act. The Supreme Court granted certiorari, vacated the panel's judgment, and remanded for "further consideration in light of *Loper Bright*." *Hosp. Menonita de Guayama, Inc. v. NLRB*, 145 S. Ct. 982 (2024).

II.

After the Supreme Court's vacatur and remand, we must first consider whether *Loper Bright* requires us to revisit the statutory analysis in *Hospital Menonita I*. *See Cavazos v. Smith*, 565 U.S. 1, 9 (2011) (per curiam) (requiring the court of appeals to "seriously confront[] the significance" of the intervening cases cited in the Supreme Court's vacatur and remand order). We conclude that it does.

*Loper Bright* affirms that courts must independently decide questions of law. The Supreme Court grounded this holding in the "traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 144 S. Ct. at 2262. When deciding cases, courts must ascertain the "single, best meaning" of applicable law. *Id.* at 2266 ("In the business of statutory interpretation, if it is not the best, it is not permissible."). Challenges to agency action are no exception to these fundamental principles. *Id.* The Court overruled *Chevron* because courts must independently assess, not defer to, an agency's assertion of statutory authority for its actions. *See id.* at 2266, 2272–73. The judicial duty in this context is, "as always, to independently interpret the statute" using the traditional tools of statutory construction. *Id.* at 2263;

*see also Seven County Infrastructure Coal. v. Eagle County*, 145 S. Ct. 1497, 1511 (2025) ("As a general matter, when an agency interprets a statute, judicial review of the agency's interpretation is *de novo*."). When Congress "delegates discretionary authority to an agency," courts must "fix[] the boundaries of [the] delegated authority." *Loper Bright*, 144 S. Ct. at 2263 (quoting Henry P. Monaghan, Marbury *and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983)).

The Hospital raised a statutory challenge to the successor bar, namely that the bar contravenes the Act, and the Board therefore has no statutory authority to impose it. Following *Loper Bright*, we must resolve this challenge by independently determining whether the successor bar is within the Board's statutory authority.

In deciding the Hospital's petition, however, *Hospital Menonita I* deferred to the Board's conclusion that the successor bar was consistent with the Act. *Hospital Menonita I* was explicit about its choice to defer to the Board's "reasoned interpretation of the NLRA." 94 F.4th at 14 (cleaned up); *cf. id.* at 17 (Katsas, J., concurring) ("Under *Chevron*, the Court's decision seems to me correct."). And the court adopted the First Circuit's deferential analysis, which relied on *Chevron* to uphold the lawfulness of the successor bar.[3] *Hospital Menonita I*, 94 F.4th at 14–15 (citing *Lily* eleven times). Resolving a legal question by deferring to the Board is inconsistent with *Loper Bright*'s directive for courts to "police the outer statutory boundaries" of an agency's delegated authority. 144 S. Ct. at

---

[3] *Hospital Menonita I* did not rely on *Lily* as a mere "citation." Dissenting Op. 7–8. When rejecting the statutory challenge, the court relied exclusively on the First Circuit's *Chevron* analysis and concluded by stating, "We can find no reason to disagree with [*Lily*'s] analysis." *Hospital Menonita I*, 94 F.4th at 14–15.

2268. Accordingly, on remand we must independently assess the Hospital's legal claim that the successor bar contravenes the Act.[4]

The Board resists this conclusion and argues we should reaffirm the vacated decision because even after *Loper Bright* this court must defer to all reasonable labor policies adopted by the Board, including the successor bar. But the Hospital's challenge is not about the reasonableness of the successor bar as a policy judgment. Rather, the Hospital has maintained that the successor bar is inconsistent with the Act and therefore the Board has no statutory authority to impose it.

In response to the Hospital's challenge, our dissenting colleague repeatedly makes the unobjectionable observation that the Board may act within its delegated policymaking authority. But courts must ensure that the Board's policies are in fact consistent with its statutory authority, as the cases cited by the dissent confirm. *See* Dissenting Op. 4; *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42 (1987) (stating a Board rule will be upheld if "rational and consistent with the Act"); *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 787 (1990) (same); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 364 (1998) (same). Because *Hospital Menonita I* did not independently determine whether

---

[4] On remand, the Hospital does not reassert its challenges to the Board's fact finding and remedies, and we do not disturb the conclusions of the vacated judgment on these issues, which are not undermined by *Loper Bright. See United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) ("When the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding continues to have precedential weight … in the absence of contrary authority.") (cleaned up).

the successor bar is consistent with the Act, it does not comport with *Loper Bright* or these older cases.

The Board and amicus also stress that *Loper Bright* did not "call into question prior cases that relied on the *Chevron* framework." *Loper Bright*, 144 S. Ct. at 2273. True, the judgment in *Loper Bright* does not necessarily justify overruling settled precedents that relied on *Chevron*. But *Hospital Menonita I* was not a settled precedent. It was this court's first decision on the successor bar, and the Hospital petitioned for certiorari after *Loper Bright* was decided. In granting certiorari, vacating the judgment, and remanding, the Court explicitly directed this court to reconsider our decision in light of *Loper Bright*.[5] *Hosp. Menonita*, 145 S. Ct. at 982. The Court's specific directive in this case takes precedence over *Loper Bright*'s general rule of respecting settled precedents.

Because *Loper Bright* prohibits us from deferring to the Board's legal conclusions, on remand we must reconsider the Hospital's statutory challenge and independently determine whether the successor bar is consistent with the Act.

### III.

The Board's successor bar compels an employer who acquires a business to recognize and bargain with an incumbent union for up to one year, even if the union lacks majority support. The successor bar thus contravenes the Act by suspending two statutory protections: employees' right to choose whether and how to collectively bargain and their right

---

[5] The fact that the Court provided no reasoning for its action is beside the point. *Contra* Dissenting Op. 8–9. We cannot ignore the Court's grant, vacatur, and remand because it issued only an order.

to be represented by a union that has majority support. Moreover, we reject the Board's arguments that it has "policymaking" authority to suspend these guarantees of the Act. We therefore grant the Hospital's petition because the Board acted contrary to law when it applied the successor bar, refused to consider the Hospital's evidence that most of its employees rejected representation by the Union, and found the Hospital liable for an unfair labor practice.

A.

The successor bar violates sections 7 and 9 of the Act by requiring successor employers to recognize and bargain with an incumbent union, regardless of whether that union enjoys the support of a majority of employees.

The Act guarantees employees the right to choose a union that represents their interests. Section 7 provides employees with the unqualified right "to bargain collectively through representatives of their own choosing" or "to refrain" from such activity. 29 U.S.C. § 157. To effectuate employee freedom of choice, section 9(a) conditions a union's status as the "exclusive" bargaining representative on having the support of "the majority of the employees." *Id.* § 159(a). Employers must recognize and bargain with the exclusive representative chosen by a majority of employees. On the flip side, however, employers cannot recognize and bargain with a union that lacks majority support because that would unlawfully "impress[] that [union] upon the nonconsenting majority." *Garment Workers*, 366 U.S. at 737.

The successor bar nullifies these statutory protections for up to a year after a successor employer assumes control of a business. The bar prevents any claim—by an employer, employees, or a rival union—that the incumbent union lacks the majority support required by the Act. *See UGL-UNICCO*,

357 NLRB at 803 (explaining the successor bar "prevent[s] any challenge to the union's status"). Incumbent unions are thus deemed majority representatives by Board decree. Given an employer's statutory duty to recognize and to bargain with their employees' representative, the bar effectively compels employers to bargain with an incumbent union, even if the union indisputably lacks majority support. By entrenching incumbent unions, irrespective of whether they enjoy majority support, the successor bar is inconsistent with section 7's unqualified employee right to freedom of choice and section 9's requirement of majority rule.

Congress's provision of only one time bar against challenges to a union's majority status underscores the Board's lack of authority to adopt the successor bar. The Act generally requires majority representation, and it allows employees, employers, and other unions to test whether a union has majority support by petitioning the Board for an election. *See* 29 U.S.C. § 159(a), (c)(1). The Act, however, prohibits the Board from holding an election if "in the preceding twelve-month period, a valid election" has been held. *Id.* § 159(c)(3). The Board enforces this one-year time bar "from the date of certification rather than the date of election." *Brooks v. NLRB*, 348 U.S. 96, 99, 101–02, 104 (1954) (upholding the Board's rule because it applies "only to the period during which a second election is impossible" under section 9(c)(3)).

When Congress establishes a legal requirement and provides a single exception, the most natural interpretation is that an agency cannot create additional exceptions to the statutory rule. *See Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 321 (D.C. Cir. 2003) (holding the Board may not recognize a union's unilateral extension of a notice to strike because "Congress carved out but a single express exception" to the Act's notice requirement, which demands the

consent of both parties). Here, the Act protects employees' freedom of choice through representation by majority rule, and the only circumstance in which a union's majority representation status cannot be challenged is for a limited time after a certified election.[6] *See* 29 U.S.C. §§ 157, 159(a) & (c)(3); *Brooks*, 348 U.S. at 104. The text and structure of these provisions are best read to foreclose the successor bar, which erects an additional limitation on the rule of majority representation unmoored from the Act's provisions regarding the timing of elections and union certification.

The Board's enforcement action against the Hospital further demonstrates how application of the successor bar contravenes the Act. The Board's central charge is that the Hospital violated section 8(a)(5) by withdrawing recognition and refusing to bargain with the Union. But an employer has a duty to bargain with a union only if the union represents a majority of its employees. 29 U.S.C. §§ 158(a)(5), 159(a); *see also NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO*, 434 U.S. 335, 346 (1978) (holding that section 8(a)(5)'s cross-reference to section 9(a) limits an employer's bargaining obligation to "a *majority* representative"). Ordinarily, the Hospital would be allowed to defend against the Board's charge by demonstrating the Union lacks majority support. *See, e.g.*, *Pac. Coast Supply*, 801 F.3d at 325–26 (explaining an employer may "withdraw

_____

[6] The Board argues the Hospital "is jurisdictionally barred" from relying on section 9(c)(3) of the Act because the Hospital did not cite that provision before the Board. *See* 29 U.S.C. § 160(e) (barring courts from considering an "objection that has not been urged before the Board, its member, agent, or agency"). There is no dispute, however, that in the Board proceedings the Hospital raised its statutory objection to the successor bar. To properly address that preserved legal challenge, we must consider all relevant provisions of the Act.

recognition unilaterally" if it "can prove that [the] incumbent union has, in fact, lost majority support") (cleaned up).

In the proceedings before the Board, the Hospital provided evidence that most of its employees rejected the Union and that the employees of one bargaining unit unanimously denounced the Union as their representative. The Board, however, refused to even consider the Hospital's evidence because under the successor bar an incumbent union's representation may not be challenged for up to one year. But if the Union in fact lacked majority support, the Hospital's refusal to bargain would have been lawful. The successor bar compelled the finding of an unfair labor practice, even when the Hospital's evidence may have established that it had no obligation under the Act to recognize and bargain with the Union.

Under the successor bar, when a new employer acquires a business, an incumbent union is protected from any representation challenge for up to one year. The bar thus compels the successor employer to recognize and bargain with the incumbent union, even if it lacks majority support. That rule is inconsistent with the Act's protection of employee freedom of choice and representation by majority rule. The Board therefore contravened the Act when it refused to consider the Hospital's evidence challenging the Union's majority status and ordered the Hospital to collectively bargain with the Union.

B.

The Board attempts to justify the successor bar as consistent with its policymaking authority and the purposes of the Act. But these arguments cannot overcome the specific requirements of the Act.

First, the Board argues that the successor bar falls within "its authority to create national labor policy." NLRB Suppl. Br.

8. The Board, however, cites no statutory provision to support this claim. When pressed at oral argument, the Board relied on its general authority to prevent unfair labor practices under sections 8 and 10 of the Act. But as already explained, these provisions are expressly qualified by sections 7 and 9, which guarantee employees both freedom of choice and representation by a union with majority support. 29 U.S.C. §§ 160(a), 158(a)(1) & (5); *see id.* §§ 157, 159(a). Those guarantees mean that employers have no obligation to bargain with a union that has lost majority support. The Board's general authority to enforce unfair labor practices cannot justify suspending statutory protections in the collective bargaining relationship.

The Board also attempts to rely on Supreme Court precedent upholding other Board policies as reasonable. *See, e.g.*, *Fall River*, 482 U.S. at 42; *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495 (1979). These cases, however, stand for the unremarkable proposition, recognized by *Loper Bright*, that within the boundaries of the Board's delegated authority, its policy decisions are reviewed for reasonableness. 144 S. Ct. at 2263. But the successor bar's reasonableness as a policy has nothing to do with whether the Act delegates discretionary authority to the Board to suspend sections 7 and 9 when one business takes over another.

As to the scope of the Board's delegated authority, the Supreme Court has long maintained that "the Board must conform" to the Act and that "all questions" of the Board's "statutory authority[] are open to examination by the court[s]." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); *see also NLRB v. Fin. Inst. Emps. of Am., Loc. 1182, AFL-CIO* ("*Financial Institution*"), 475 U.S. 192, 201–02 (1986) (similar). The cases cited by the Board likewise acknowledge that its rules must be "consistent with the Act." *Fall River*, 482

U.S. at 42; *see also Ford Motor*, 441 U.S. at 497 (similar). The fact that other Board policies have been found both lawful and reasonable tells us nothing about whether the Board has legal authority to impose the successor bar.

Second, the Board maintains that the successor bar promotes the Act's general purposes of "industrial peace and stability" by giving bargaining relationships between successor employers and incumbent unions "a fair chance to succeed." NLRB Suppl. Br. 6–11, 13–14 (cleaned up). While promoting labor stability is one of several stated purposes, the Act mitigates industrial strife through specific provisions, including those that "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151; *see also Loc. Lodge No. 1424, Int'l Ass'n of Machinists, AFL-CIO v. NLRB*, 362 U.S. 411, 428–29 (1960) (rejecting the Board's attempt to justify a rule as a reasonable balancing of "employee freedom of choice" against "industrial peace" because "the accommodation between these competing factors has already been made by Congress") (cleaned up); *Financial Institution*, 475 U.S. at 202–04 (similar).

In conflict with these purposes and the directives of sections 7 and 9, the successor bar entrenches incumbent unions for up to one year. Even if an incumbent union lacks majority support, an employer must recognize and bargain with that union on pain of liability for an unfair labor practice. But the Board has no authority to favor incumbent unions at the expense of the statutory protections for employees, because the Act "confers rights only on *employees,* not on unions." *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 532 (1992). General concerns for industrial stability cannot save the lawfulness of the successor bar, which is really a rule of *union* stability that

comes at the expense of employee freedom of association and self-organization.

Third, the Board relies on *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781 (1996), for the proposition that it has broad authority to impose irrebuttable presumptions "limiting an employer's ability to withdraw" recognition from a union. NLRB Suppl. Br. 6–7. *Auciello* affirmed a Board decision that relied on its so-called "contract bar," under which the Board presumes that a union maintains majority support during and after the term of a collective bargaining agreement. 517 U.S. at 786. But the Court addressed only the contract bar's application as a presumption that allowed employees to challenge a union's representation status through an election petition and that could be overcome by employers in multiple ways, including through evidence demonstrating the union "in fact lacked majority support" when the collective bargaining agreement was executed. *Id.* at 784 n.2, 790; *see also id.* at 789 n.6. By contrast, the successor bar is never rebuttable, and as the Board has stressed, it protects incumbent unions from "*any* challenge" for up to one year. *UGL-UNICCO*, 357 NLRB at 803 (emphasis added). The Court's narrow decision in *Auciello* does not recognize the broad authority asserted by the Board, and therefore it cannot save the successor bar, which categorically suspends the Act's protections.

Finally, the Board reiterates the argument adopted by *Hospital Menonita I* that the successor bar saves "litigation time and expense" because it is irrebuttable. NLRB Suppl. Br. 11 (quoting 94 F.4th at 15). But as the Supreme Court has admonished, the Act's protection of "[i]ndividual and collective employee rights may not be trampled upon merely because it is inconvenient to avoid doing so." *Garment Workers*, 366 U.S. at 740. Efficiency concerns cannot create regulatory authority for the Board.

19

* * *

On remand after *Loper Bright*, this court must independently evaluate whether the Board has statutory authority to impose the successor bar. We conclude the bar suspends the Act's guarantees of employee freedom and majority rule in collective bargaining, and the Board lacks authority to impose such a rule. Moreover, the Board's general policy goals, however "reasonable," cannot overcome its lack of statutory authority.

When defending against unfair labor practice charges, the Hospital was entitled to put forward evidence that the Union did not have the support of a majority of the Hospital's employees. Accordingly, we grant the Hospital's petition for review, deny the Board's cross-petition for enforcement, and remand for further proceedings consistent with this opinion.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, dissenting:

The Supreme Court vacated the original panel's judgment and remanded the case for "further consideration in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)." *Hospital Menonita de Guayama, Inc. v. NLRB*, 145 S. Ct. 982 (2024).[1]

*Loper Bright* overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).[2]

---

[1] When the case returned to our court, it was heard by a different panel. It should have instead been retained by the original panel—Senior Judge Edwards, who wrote the opinion, Judge Henderson, and Judge Katsas. *See* D.C. Cir. Handbook of Practice & Internal Procedures 49 (2025) ("When the Supreme Court remands a case to this Court for further proceedings, the case is assigned to the same panel that previously considered it."). Compliance with our rule is especially appropriate in this case. Resolution of the Supreme Court's remand order turns on whether *Loper Bright* affected the original panel's decision. Needless to say, the original panel would best know the answer to that question.

[2] There is an error in the Supreme Court's analysis in *Loper Bright*. Much of the Court's reasoning (and a part of Justice Gorsuch's concurrence) is devoted to criticizing the *Chevron* opinion for ignoring section 706 of the Administrative Procedure Act, 5 U.S.C. § 706. *See, e.g.*, 603 U.S. at 397-400, 411-12; *id.* at 428 (Gorsuch, J., concurring). The Court's critique is unfounded. It is unfounded because section 706 of the APA did not apply to judicial review of the EPA rule at issue in *Chevron.* Section 706 did not apply because *Chevron* was not an APA review case. The Clean Air Act superseded the APA: "The provisions of section 553 through 557 and section 706 of Title 5 [the APA] shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies." 42 U.S.C. § 7607(d)(1). The problem the Court identified in *Loper Bright* was not with *Chevron* itself, but with courts, including the Supreme Court, indiscriminately adopting the *Chevron* formula in later cases in which section 706 of the APA did apply.

Compliance with the Supreme Court's order necessarily requires our court to be precise about the basis for the Court's overruling of *Chevron*. An accurate description is that *Loper Bright* rejected the view that courts may treat statutory ambiguity as an implicit delegation of discretionary interpretive authority to an agency. 603 U.S. at 399-400; *see* Thomas W. Merrill, *The Demise of Deference—and the Rise of Delegation to Interpret?*, 138 HARV. L. REV. 227, 265 (2024).

It follows that we must determine whether the original panel relied on statutory ambiguity as conferring discretionary interpretive authority on the NLRB—that is, whether it upheld the Board's successor-bar rule by applying the *Chevron* framework.[3] The answer to that question is obvious:

---

[3] Although the successor-bar rule has gone through several iterations, *see* ROBERT A. GORMAN & MATTHEW W. FINKIN, BASIC TEXT ON LABOR LAW: UNIONIZATION AND COLLECTIVE BARGAINING 794-95 (2d ed. 2004), its current form has been in effect for a decade and a half. It has also been sustained by the First Circuit, the only other court of appeals to pass on its validity. *See NLRB v. Lily Transportation Corp.*, 853 F.3d 31 (1st Cir. 2017). Congressional acquiescence to a circuit-level construction is, of course, an imperfect indicator of legislative approval. *See* William N. Eskridge, Jr., *Overriding Supreme Court Statutory Interpretation Decisions*, 101 YALE L.J. 331, 416 (1991) (observing that although Congress showed "impressive" engagement with Supreme Court decisions, it showed "unimpressive knowledge of and response to the far more numerous lower federal court statutory interpretation decisions"). But the inference is stronger when, as here, committees in both Houses have examined the very rule at issue and Congress has declined to alter it. *See Culture of Union Favoritism: Recent Actions of the National Labor Relations Board Hearing Before the H. Comm. on Education and the Workforce*, 112th Cong. 24

the original panel did no such thing. Yet the majority neither asks nor answers this essential question.

The majority seems to assume that, in the period between *Chevron* in 1984 and *Loper Bright* in 2024, any court that deferred to a substantive NLRB rule must have done so in reliance on *Chevron*, even if the court—like the original panel here—neither cited *Chevron* nor invoked its two-step formula. That premise is mistaken. *Chevron* supplied one theory of agency deference: a presumption that statutory ambiguity implicitly delegated interpretive authority to an agency. But it did not displace, much less create, the distinct principle that the NLRA itself entrusts the Board with substantial discretion to develop and implement national labor policy.

Three post-*Chevron* decisions of the Supreme Court involving the NLRB illustrate the majority's analytical error. In *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42 (1987), *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775 (1990), and *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1998), the Court addressed substantive Board rules after *Chevron* had been decided. Yet those opinions neither cited *Chevron* nor applied its deference formula. Instead, they rested on the NLRA-specific

---

(2011); *Examining Proposals to Strengthen the National Labor Relations Act Hearing Before the H. Subcomm. on Health, Employment, Labor, and Pensions of the H. Comm. on Education and the Workforce*, 112th Cong. 16 (2012); *Protecting Workers' Right to Organize: The Need for Labor Law Reform Hearing Before the H. Subcomm. on Health, Employment, Labor, and Pensions of the H. Comm. on Education and Labor*, 116th Cong. 19 (2019); *Defending the Right of Workers to Organize Unions Free from Illegal Corporate Union-Busting Hearing Before the S. Comm. on Health, Education, Labor, and Pensions*, 118th Cong. 43 (2023).

understanding that Congress gave the Board primary responsibility for making the policy judgments necessary to administer the Act.

In *Fall River*, the Court succinctly stated the governing principle: "If the Board adopts a rule that is rational and consistent with the Act, . . . then the rule is entitled to deference from the courts." 482 U.S. at 42. The original panel faithfully implemented that principle. *See Hospital Menonita de Guayama v. NLRB*, 94 F.4th 1, 13-14 (D.C. Cir. 2024) (*Hospital Menonita I*). The majority ignores it.

*Curtin Matheson*, which the original panel also quoted and relied upon, *see Hospital Menonita I*, 94 F.4th at 5, confirms the same point. The Court there explained that it "ha[d] emphasized often that the NLRB has the primary responsibility for developing and applying national labor policy." *Curtin Matheson*, 494 U.S. at 786. To that end, the Court directed reviewing courts to "uphold a Board rule as long as it is rational and consistent with the [NLRA], even if [the court] would have formulated a different rule had [it] sat on the Board." *Id.* at 787. The majority opinion defies that Supreme Court directive.

*Allentown Mack* is equally telling. In an opinion cited in *Loper Bright* itself, 603 U.S. at 395, Justice Scalia wrote for the Court that "[t]he Board can, of course, forthrightly and explicitly adopt counterfactual evidentiary presumptions (which are in effect substantive rules of law) as a way of furthering particular legal or policy goals—for example, the Board's irrebuttable presumption of majority support for the union during the year following certification." 522 U.S. at 378. The "of course" is notable and inconsistent with the majority's opinion in this case.

*Loper Bright* made crystal clear that, in overruling *Chevron*, the Court was not sweeping away these preexisting grounds for recognizing agency discretion. *See* 603 U.S. at 394-395, 404. To the contrary, the Court took pains to distinguish *Chevron*'s broad presumption from circumstances in which Congress has actually conferred discretion on an agency. As relevant here*, Loper Bright* reaffirmed that Congress may confer such authority by "empower[ing] an agency to prescribe rules to 'fill up the details' of a statutory scheme . . .." *Id.* (alteration in original) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825)). The following Term, the Court reiterated that "when an agency exercises discretion granted by a statute . . . a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179-80 (2025).

This distinction has deep roots. A decade before *Chevron*, Judge Friendly recognized that when Congress entrusts an agency with the responsibility to formulate and implement national policy, courts may reasonably infer a congressional intent to afford that agency discretion in executing that charge. *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 49 (2d Cir. 1976). That inference depended on the particular statutory context. *See id.* at 49-50. When the statute conferred such latitude, courts gave effect to that choice. *Process Gas Consumers Grp. v. U.S. Dep't of Agric.*, 694 F.2d 778, 791 (D.C. Cir. 1982) (en banc). *Chevron*, however, collapsed that disciplined, "statute-by-statute evaluation" into what Justice Scalia described as "an across-the-board presumption." Antonin Scalia, *Judicial Deference to Administrative Interpretations of Law*, 1989 Duke L.J. 511, 516.

In a later reflection on Judge Friendly's jurisprudence, I suggested that he would have resisted the reflexive deference that emerged in *Chevron*. *See* A. Raymond Randolph, *Administrative Law and the Legacy of Henry J. Friendly*, 74 N.Y.U. L. REV. 1, 16 (1999). I anticipated that the Supreme Court might one day correct course by reaffirming Judge Friendly's more disciplined conception in which any discretionary latitude afforded an agency must derive from a statute-specific inquiry. *Id.*

*Loper Bright* marks that correction. The Court rejected *Chevron*'s across-the-board presumption, under which ambiguity itself served as a proxy for delegation. *Loper Bright*, 603 U.S. at 399-400. But it preserved the distinct principle that Congress may confer discretionary authority on agencies in particular statutory schemes. *Id.* at 394-96. The proper inquiry is not whether the statute is ambiguous, but whether "the best reading of a statute is that it delegates discretionary authority to an agency." *Id.* at 395.

The NLRA exemplifies that distinction. By entrusting the Board with "the primary responsibility for developing and applying national labor policy," the statute assigns the Board a broad measure of policymaking discretion that long predates *Chevron* and survives *Chevron*'s repudiation. *See, e.g., Curtin Matheson*, 494 U.S. at 786. The majority misses that point in its reading of the original panel's opinion. It seizes on the original panel's statement that it would "bow to reasoned Board decisionmaking" as a confession that *Chevron* supplied the basis for decision. Maj. Op. at 9 (quoting *Hospital Menonita I*, 94 F.4th at 15). But that only begs the question *why* the panel gave weight to the Board's judgment. Did it do so because it treated statutory ambiguity as an implicit delegation of interpretive authority to the Board—the now-

discarded *Chevron* view? Or because it recognized that the NLRA itself entrusts this category of judgment to the Board?

The original panel's opinion points unmistakably to the latter. The panel did not invoke the framework developed in *Chevron*'s wake. Indeed, it did not so much as cite *Chevron*. The only reference to *Chevron* appeared not in the majority opinion, but in Judge Katsas's concurring opinion. *See Hospital Menonita I*, 94 F.4th at 17 (Katsas, J., concurring). The majority now presses that separate reference into service as a basis for recharacterizing the majority opinion. *See* Maj. Op. at 9 (citing *Hospital Menonita I*, 94 F.4th at 17 (Katsas, J., concurring)). But it goes without saying that "the meaning of a majority opinion is to be found within the opinion itself," not "the gloss that an individual [judge] chooses to place upon it." *McKoy v. North Carolina*, 494 U.S. 433, 448 (1990) (Blackmun, J., concurring). Moreover, Judge Katsas—citing the original decision in this case—acknowledged that "it would blink reality to suppose that *Loper Bright* will eliminate the NLRB's ability to conduct policymaking through adjudication under *Chenery II*." *Harris v. Bessent*, 160 F.4th 1235, 1252 (D.C. Cir. 2025).

Rather than *Chevron*'s two-step formula for resolving statutory ambiguity, the original panel relied on the Board's discretionary authority under the NLRA. The panel put it this way: "Because 'the NLRB has the primary responsibility for developing and applying national labor policy,' the Supreme Court has required that reviewing courts 'accord[] Board rules considerable deference.'" *Hospital Menonita I*, 94 F.4th at 14 (alteration in original) (quoting *Curtin Matheson*, 494 U.S. at 786).

The majority resists this reading by focusing on the original panel's citation to *NLRB v. Lily Transportation*

*Corp.*, 853 F.3d 31 (1st Cir. 2017)—the only other court of appeals decision to consider the merits of the Board's successor-bar rule and one that expressly applied the *Chevron* framework in sustaining it. *See* Maj. Op. at 8-9. From this, the majority concludes that the panel incorporated *Lily Transportation* wholesale and thereby necessarily grounded its analysis in *Chevron*. *Id.* That conclusion is not correct. The original panel independently determined—without referring either to *Lily Transportation* or *Chevron*—that the NLRA confers policymaking authority on the Board. *Hospital Menonita I*, 94 F.4th at 5.

The panel turned to *Lily Transportation* only afterward, and only for the more limited proposition that the Board's successor-bar rule fell "within the scope of reasoned interpretation [of the NLRA]." *Hospital Menonita I*, 94 F.4th at 14 (quoting *Lily Transportation*, 853 F.3d at 38). Thus, although the First Circuit in *Lily Transportation* framed its analysis in terms of *Chevron*, the panel here followed the Supreme Court's analysis set forth in *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. at 42, and other Supreme Court post-*Chevron* NLRB decisions, none of which relied upon or even cited *Chevron*.

It follows that the original panel's decision should be reinstated. Our court has long recognized that "[w]hen the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding 'continue[s] to have precedential weight, and in the absence of contrary authority, we do not disturb' it." *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) (last alteration in original) (quoting *Action Alliance of Senior Citizens of Greater Philadelphia v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991)); *see also Hopkins v. Price Waterhouse*, 920 F.2d 967, 975 & n.5 (D.C. Cir. 1990). The

Supreme Court did not reject, criticize, or even discuss the reasoning of *Hospital Menonita I*. It simply directed us to give the case "further consideration in light of *Loper Bright*." *Hospital Menonita*, 145 S. Ct. at 982. As should be clear, *Loper Bright* provides no authority for my colleagues to revisit and overrule the original panel's decision.